on session. Please be seated. Case, please. Mr Horn. Afternoon, Judge. My name is Stanley Horn. I represent Mr. Terenfenko, who's no longer in the country. I want to begin by reading the decision of the lower court and saying it was really tough to discern what he was talking about. He said, I've gone through the case's transcript, and it says, status of the law is in flux, and I'm not satisfied. I don't know what he means by what cases he looked, the status of the law, and why he's not satisfied. The law is really clear on an ineffective assistant counsel. The Supreme Court began with Kirkland. Citation is, whereas the court held that in Kirkland, we have to prove two things. We have to prove that he was prejudiced, and two, there's a possibility of, I forget the exact language, that there's a possibility that there's a prejudice to him because of this. Second thing is whether or not Padilla falls, Padilla versus Kentucky, the U.S. Supreme Court case, whether it's the obligation of counsel to tell him the consequences of a plea agreement on his immigration status, regardless of whether he asks or not. Now, there's a dispute as to whether or not Padilla is retroactive. Counsel for the government just said, I think First District. And by the way, did you just get that? Yes, I just got it. Whether or not you want to respond to it now, if you want to respond in writing within, what, 7, 14 days? Well, it's actually in our favor. It's held that Padilla is retroactive, and this was decided on June 30th, 2011. So it's not in our brief. Okay, I'm just letting you know that if you would like to file a response to that, we will give you, to give you 7 or 14 days. I'm going on vacation tomorrow. All right. Okay. Okay. So in Kirkland, we have to prove two things. We have to prove that the performance of the attorney is below the objective conduct or reasonableness, and two, that the defendant was prejudiced by his lack of giving advice. Well, first of all, we've attached a transcript showing that neither the court nor counsel ever advised the client or his parents of the effect of a plea agreement on his immigration status. What counsel told the parents and Mr. Tarafinko is that you're a legal permanent resident, and therefore, a plea agreement will have no effect on your status. Now, I've handled probably 100 or 200 of these immigration cases, and that's absolutely incorrect. It doesn't matter whether he got probation or not. The crime is an aggravated felony. As the court may be aware, that's an immigration term. And if it's an aggravated felony, he's deportable. And in effect, was deported. And you cited cases even if he walks, whether he was even convicted, if he walks in the court and admits to doing it. And found guilty, he's deportable. We cited the statute in our brief. Even 410 or boot camp. And afterwards, depending on what the crime was, you still are deportable. For example, in Cook County, you get boot camp a lot of drug cases. They're all deportable afterwards. We're talking about a judgment of conviction. We're not talking about the sentence, are we? No, we're talking about the judgment, not the sentence. That's right. So boot camp is a sentence, isn't it? Yeah, but if he's found guilty. So it doesn't matter whether it's boot camp or probation. We're talking about judgment of conviction. Right. And he's deportable. And he was deported in this case. Now, he was prejudiced and counsel failed to give him proper advice. The other case that's really apropos is Banner of Korea, which is exactly what happened. They asked the lawyer what would happen on this immigration case. The lawyer said, no effect on your plea, no effect on your immigration status. And the Supreme Court said that's an effect of assistance of counsel. As I said, Mr. Tarafenko is now residing in Poland. His whole family is here. They deported him probably a week after the judge rendered his decision. The case law is real clear now that if a lawyer gives you bad advice on an immigration, on your status in immigration and as a result prejudices you in some way, that's an effect of assistance of counsel and the whole matter should be vacated. The conviction should be vacated and a new hearing held on this. When we filed our motion, we attached an affidavit on one of the people who was accused of the crime. And he said that Mr. Tarafenko was not present at the time the crime was committed. In fact, he wasn't arrested at the scene of the crime. He was arrested at his house several hours afterwards because someone said he was part of the crime. When this was never presented to the court because the lawyer just said plead guilty and you'll get a lesser sentence. He didn't want to serve time in jail. And if he wasn't going to have any sanctions imposed on him by immigration, it would have been okay to plead guilty and probation. But because of the immigration law as it stands right now, he was and is, he was deportable and was actually deported. And he now resides in Poland. His entire family is here in the United States by him. He lives in Poland. I'm not exactly sure what city he's lived in, but he has nothing to do in Poland. If the criminal court, if the immigration judge, they would vacate the deportation order and allow him to come back to the United States and resume his status as a permanent resident of the United States. But the issue before us is whether the trial court should have dismissed that post-conviction petition at the second stage or conducted an evidentiary hearing. The issue is whether the petition should have been dismissed at the second stage or whether there should have been an evidentiary hearing to decide whether the matters in the affidavits were true. Right. So we're, even if everything goes beautifully for you today, it goes back to the circuit court. Yes, I agree. The problem is we can't have an evidentiary hearing. What we're going to have to do is send interrogatories to the counsel in Warsaw and he'll have to answer, Mr. Trafalgar will have to answer those interrogatories and we'll present it to the court because he cannot at this moment come back to the United States for 10 years. Well, that goes to a point that the state brought up and that is the affidavits of the co-defendants do not indicate they're willing to testify. How does that affect your position? I don't think it affects it at all. I think that the affidavits of the parents and Mr. Trafalgar are sufficient as far as ineffective assistance of counsel. And the laws, I don't understand why the lower court said that there's no law on this case because matter of Korea, Kirk, matter of fact, people of Princeton, Kirkland clearly indicate that ineffective, by giving bad immigration advice, there's prejudice and it is an ineffective assistance of counsel. And makes them deportable. And no advice at all is bad advice in... Under Portilla, it is no advice is better. It is under Portilla versus Kentucky. The obligation of the lawyer is to tell him what the effect of a plea agreement and a finding of guilty would have on his immigration status. That's an interpretation that it just came down when the decision was rendered. But Korea is more akin to this case because there was a question from the family. It may not have been from the defendant, but a question, how will this affect? It's not that the attorney failed to volunteer an answer. He was specifically asked the question and then gave bad advice. Right. And that Korea decision was made in 1985. And so I don't think Padilla affects that. I agree with that. I think Korea is a controlling situation because when you ask a lawyer what effects my plea agreement was going to have on my immigration status and the lawyer says, so don't worry, you're a puppet of the rest of the United States, that is wrong. But in this case, your affidavit said his parents asked, not him. His parents asked. Was he present? With his presence. The affidavit doesn't say that. Right. I know that. So if my parents asked, you know, Fred Smith down the street could have asked too, but... Well, he's 17 years old at the time. And I understand that. I've got kids, but I'm just saying the affidavit leaves a little gap there because it doesn't say that in his presence, you know, you have a 17-year-old kid, chances are mom and dad's going to do most of the talking when you're meeting with the lawyer, but the affidavit just doesn't make that clear that he was present. But I know he was present. He said he was present. The problem was I always had to talk to him in the custody of ICE, Immigration and Customs Enforcement. So it made some difficulties, but he was present when his parents talked to the lawyer. They paid the lawyer, you know, and they... At a third stage hearing all this could be hashed out. Pardon me? At a third stage hearing all this can be hashed out. Yes, absolutely. Okay. And what we're requesting is that it be sent back. Actually, I would like it to be before, I don't know if we can have a different judge, but to a different judge to hear the case. On what basis? Well, because this decision is so off the wall, and so somebody decided that I don't know if he would consider the law as it exists. Well, if he doesn't... I guess I have to take a motion for change of opinion. Only about 60 miles away or 40 miles away. But in other words, it really ain't so clearly on the record that this judge is biased against your client or something, you know. I understand he disagreed with this decision, but that's usually kind of extreme measure, it seems to me, for us to send it back and assign it to a new judge. Okay. Well, what happened was in this case, we were before a judge and she heard the whole case. She was the trial judge in the case. And that day she was busy, so she sent it across the hall to this judge. He wasn't the original judge hearing the case. It was Judge Leavis that decided this, wasn't it, Judge Leavis? Yes? And if we could go back to the original judge, that's what we would like to do. I think that'll get left up to the Chief Judge and probably get 10 days to respond. I know that there's been two cases that came down. There's a case from the Seventh Circuit, which held that Portillo is, as you say, Korea is the controller, not Portillo, is said that Portillo is not retroactive, although there was a strong dissent by Judge Williams. And there's a Third Circuit case that says, Court of Appeals, says that all over the country, saying some saying it is retroactive, some saying it's not retroactive. This is a case that's ultimately going to go back to the Supreme Court. Did Padilla create new law? That's a question. Then the question of retroactivity is, I mean, retroactivity suggests that it, well, I'm not sure that's the right term, is it? Well, that's the term everybody's been using. That's everybody's using the term retroactive. Think about it. I don't think it's proper term. Okay. Well, as you say, the Third Circuit said it's not retroactive. The Seventh Circuit said it is. I mean, the Third Circuit said it's not retroactive. The Third Circuit said it is not retroactive. The Third Circuit said it's not retroactive. It applies to cases even before Portillo was applied. So, all right. Well, and you're going to file something within 10 days? Yes, we'll file something. Thank you. Thank you, Mr. Horne. Mr. Arado. May it please the Court. Good afternoon. Who is the I don't know that it was Judge Trevis that made the decision in this case. We know that, but I guess we're going to have to deal with this problem. Okay. Your point is, Justice Wright, is well taken about which case applies, and then we can determine whether Padilla needs to be discussed. Can you give me a different point if I can interrupt you? Oh, sure. Do we have to It depends on whether you find his post-conviction petition sufficiently alleged that he was asked the question, the defendant asked the question, and counsel told defendant that he was not going to have any problem with immigration issues. That's, I think, the first inquiry that the Court needs to discuss. If it finds that it's all right just for the family to ask, and then he talks to the family. I mean, there is that in that his affidavit. Then we have to discuss whether Padilla applies, because Correa clearly applies if there is an affirmative request and he's given false information or incorrect information. So, I mean, it is our position, as Justice Schmidt noted, that his affidavit only says that his family discussed with the attorney, and in fact says that my attorney, I believe it's paragraph 7 of his affidavit, says my attorney never advised me regarding the consequences of immigration. If that's the case, then I think the finding should be that Correa doesn't apply because he wasn't, he gave no specific, no advice whatsoever to the defendant. Now, if you find Okay, let me ask you this. Can we find, based on the affidavits, that when the parents who have retained an attorney for a minor, their 17-year-old child passed, that triggers Correa? Why would that not? If he was treated as a juvenile, I would suggest that is all right, but he was being tried as an adult at that particular, or charged as an adult at that particular time. So what did the Sorry. I'm just saying, but when did it, in the recent history, it's changed, it used to be, you know, 17, one was an adult, and then they changed it to 18, right? Yeah, that's what's been. And how many, was this before or after that? This was eight years ago when he was charged, and that change only came last. So, so he would have been an adult. He would have been an adult under the law at that time. Correct. So, so I don't think it matters what if his parents paid for the attorney or not. I mean, I could have paid for his attorney and if the attorney's giving me advice, it's not going to affect me. But if he, in fact, is sitting there with his parents, and the parents ask, is this going to have a bearing on it? And the guy says, is it your immigration status? And the attorney says, no. The defendant doesn't then have to ask, you know, I mean. True. But in the reality, you know, parents even, you know, 17-year-olds are still, they're adults legally, but parents don't look at 17-year-olds as adults. Certainly not. If there was something in the affidavit that said he was sitting there with his parents, then absolutely. I don't think he would have to ask again. But there's really nothing that is clearly states that I'm, I was present at the time that my family asked the question and the attorney gave the answer. Is there any dispute that the affidavit establishes that the lawyer gave the advice? I don't think that there's, well, at this stage, no. We take those two pleadings as true. The parents either gave their son bad advice or passed on the attorney's advice. Possibly. Because we don't actually, there isn't then a, an My family then told me this. So as I understand your position, if we find that the question was asked, then Korea applies. And if we, in reviewing the affidavits ourselves, as we're allowed to do, do not find that a question was asked, then we have to go to Padilla. Correct. Because Hante, the Illinois Supreme Court case, 1991, says you don't have an obligation as an attorney to tell your client about volunteering. So if Hante applies, now we have to look at whether Padilla is retroactively applied. As far as retroactive or not, I guess the proper term is whether it can be applied to cases on collateral review. The short term is retroactive application. The, there is a huge split right now among courts. As I was looking, again, as we're preparing, and I filed a motion for adding authority to cases, one was Gutierrez from the First District of our fellow courts that finds that Padilla does apply retroactively. And then the Seventh Circuit, about two months later, in the last month, came out with a case reversing one that defense counsel, the defense counsel was referring to Chavez, saying Chavez was wrongly, at the district court level, was wrongly decided. And in fact, it is not applied retroactively. Well, where does Hante come in? I mean, that's just an Illinois Supreme Court decision, right? Well, it comes in because... We've got a U.S. Supreme Court decision in Padilla. Well, Padilla is, the question is whether Padilla is changing the law or changing it in effect in a manner that would apply to all cases, because it's applying only an old rule, whether it's... What was the old rule? The old rule under at least nine circuits was that you don't have to give your information regarding collateral matters, collateral matters including immigration consequences. Yeah, but didn't Padilla really, I mean, in their language, suggest, hey, you know, for the past 15 years, professional norms of jurisdiction will be imposed on an obligation of counsel to provide advice on deportation. True, but Padilla had no prior to... It sounds like they're not doing a new rule here. Well, as Justice Alito pointed out in his concurrence, that prior to that case, Padilla, there had been no time that the Supreme Court said that you have to consider collateral consequences. Now, he, now the majority in Padilla says something along the lines of... That it was understood? Now, I don't think that they... I don't think they say it's understood. They're saying that we're looking at what the ADA recommends and those types of things, but all the case law, not, I shouldn't say all the case law, but the majority of the case law, even after those standards were, came out in 15 years previously, 15 years and after, had said there's no obligation to tell counsel or tell the defender about collateral consequences, including deportation possibilities. The question that you have to determine whether something, well, one of the issues of determining whether something is retroactively applied or not is whether it was, the rule would have been required to have been applied at the time of the, that the person was sentenced or the finding was made in the lower court. And the, that's where the split is perhaps made. The Seventh Circuit and other courts have said that at the time in this jurisdiction in Illinois, if that case had come before this court, the obligation of this court would have been to apply HOMTE and say you have to, counsel did have a obligation to tell him about the consequences. Not necessarily if we find Korea is not distinguishable. Well, HOMTE is, was found after, I'm saying if, if you find that, yeah, keeping Korea and HOMTE separate, if it's a HOMTE type of case, then if it's, then you would have been obligated to follow HOMTE back in 2003. After Padilla, of course, had to say it doesn't matter. So if that's the state of the law and that reasonable minds at least could disagree about what the state of law was back then, then it can be considered a new rule and it's not applied backwards on cases on collateral review. And that's what the Seventh Circuit and other courts have been finding. But on the flip side, we have the other cases, Gutierrez and others, that are saying that this isn't a new rule because Strickland is just Strickland. You know, this is the standard and, and, but the problem then is, as the Seventh Circuit's got notes from Chavez, there could be no new, new Strickland standard ever applied because all it would take is some, somebody to, the ABA or somebody to say, well, this is what new appropriate standard is and now you have to go by that rather than the case law saying specifically. Well, what else do you look for as to the quality of representation? Cases. What is it that the, what is it the attorneys have to rely upon? The ABA recommendation or what the case law says? The ABA recommendation has no presidential value. It might be helpful to the DA court in submitting its decision, but if I'm going to, if I have to stand on either the Illinois Supreme Court case or the ABA recommendation, I'm going to stand on the Illinois Supreme Court case. So an Illinois lawyer before the DA didn't have to do this. Correct. Because it went. Correct. So, so as I say, it comes down to those. That's on voluntary, that's, that's advising on collateral, not upon a request, but just an obligation to advise. Correct. So, so the first question this court has to answer is whether or not this was an actual question the defendant knew about. And then, if no, then we have to worry about Hunte and Padilla. If yes, then Priya applies. Now then, of course, you have to look at prejudice. Even the cases that, that say that you have to voluntarily give the information, you have to, the defendant has to show that he would have prevailed had he gone to trial. That's, that's Gutierrez, the case that just came out in the First Circuit, indicated. Now in here, in this case, we do have some affidavits submitted from co-defendants saying, well, he wasn't, our defendant wasn't there. As I believe I pointed out, there's no indication in those that they would be willing to testify at a trial or would have testified at the original trial taking place. So there is some issues of, of whether he is truly prejudiced. Now, naturalities of prejudice, he's in Poland, I suppose, but from a perspective of... Does the prejudice arise from the guilty plea alone? Correct. We don't, the prejudice that cannot arise based simply on his deportation. I'm just speaking in the most general term. It has to, the prejudice has to have, but for his, the bad advice, he would have continued to prevail at trial based upon that. Thank you. So we would submit that he probably would not have prevailed. And this is a gentleman who, eight years ago, was given tests. Would he have to prevail ultimately, or he would have been in the country a little bit longer, even if he would have been found guilty? Trials are rather lengthy things. If, I mean, eight years, if he had gone to trial, it probably would have been resolved a long time ago. And if he had been found guilty, as he admitted that... Well, how long after he pled guilty was he deported? What, when was this decision, 2010? So seven years. So it would  probably have been resolved before seven years. But the fact of the matter is they didn't get around for seven years, right? Well, that's partly the defendant's fault. He agreed to a task probation, which, if he had fulfilled, he would have been able to petition for the... That, that, that argument, it begins the day of judgment of conviction. Your, your, your risk, isn't it? Well, as I point out in that brief, there's a statement by counsel that his, prior to his one-year sentence, he, it was not only deportable, but basically there was absolutely no defense to deportation. Prior to that, he would have been allowed to, to file an application for an immigration judge for discretion and waiver. Let me ask you if, because in, in counsel's reply brief, you, the argument you made about the task probation, if it's completed, then the conviction is vacated and he would have been deportable. Counsel, in his reply brief, basically said, that's nonsense. It's not the law. Insights cases say it's not the law. What's your position on that? Well, my position is that there's a difference between deportable and deport, automatic deportion, deporting. Deportation. Deportation. Thank you. And his statement indicates that he, and I, I can't even begin to say that I fully understand the intricacies of immigration law, but it certainly looks, based on comments that he, there's a difference between deportable and, it's void and voidable. These are deportable or automatically deported. For foreboding reasons, we request that you affirm. Thank you. Mr. Lawrence of Rebuttal. On the issue of deportable, the question of what is the crime makes a determination of whether he's deportable or not, not what the sentence is. So his crime was an aggravated felony under the immigration law and never mentioned deportable. There's no waiver of that. And his exposure began the day that, pardon me, his exposure to deportation began the day that judgment was entered by the court. That's correct. Right. Now you asked about retroactivity and I want to read you from the third circuit. They use exactly retroactive. It says, in the year since Padilla was decided, state courts and federal district courts consider Padilla retroactivity have resigned, have reached their conclusions. So everyone uses the word retroactive. I'm just thinking from Scholastic's sense of time. Okay. In his affidavit, it assumes a fact, not an evidence. It's a new rule. Right. In his affidavit, he testified, he states that he discussed the matter with his parents who were really in control of the situation. They hired the lawyer, they dealt with the lawyer, and they just all, the law parents asked whether or not this would be effective. The lawyer didn't know, thinking that you have a green card, you're a permanent resident, you are subject to the same sanctions that everyone else is. No aggravated felony term is a term that came into effect about 1990 and it's been expanded ever since. At first it was only drug cases and now it's murder and now it's sexual abuse and all kinds of things, fraud, depending on what the penalty is. So it's a term of art as immigration uses to impose sanctions on people. And looking at the affidavit, how can a 17-year-old deal with a lawyer when his parents are intimately involved in it? And since his parents were in the control of the situation, they asked the lawyer and relayed it to him. They had discussions about it in his affidavit. Well, there was, I should say, did he ask the lawyer and then they relayed it or was he sitting there when his, with, you know, parents and the kids? My understanding is that he was never alone with the lawyer. No, he didn't have to, I'm saying, was he in the room when his parents asked the question? I don't know about that. That I don't know. I couldn't tell you that, yes or no, but they told me in various discussions, they talked to him, they couldn't understand why he was deportable after the lawyer said, he's a permanent resident, why is he deportable? Actually, he's eligible for citizenship, but why he was deportable, they could never understand it. They came here, their parents are immigrants, and they came here and they thought that everything would be okay. He got a lawyer, they would work, you know, and they got the wrong information. As a result, he's now in Poland. Okay. All right. Thank you. And thank you both for your arguments here this afternoon. This matter will be taken under advisement. Written position will be issued. Right now, the court will be in recess for a panel.